[No. 23518. Department Two. March 4, 1932.]

L. DIOGUARDI, *Appellant,* v. ROBERT HADDOW, JR., *et al., Respondents.*[1]

*Arthur E. Campbell, Roberts, Skeel & Holman,* and *W. E. Evenson,* for appellant.

*Robert B. Abel* and *W. H. Brinker,* for respondents.

[1]Reported in 8 P. (2d) 978.

Main, J.—This action was brought by the principal contractor on building construction work against a subcontractor and the surety upon his bond to recover for materials furnished the subcontractor for which he had not paid, and for which claims had been filed against the plaintiff and the surety on his bond. The National Surety Company, the surety on the subcontractor's bond, answered the complaint by denials. Robert Haddow, Jr., the subcontractor, filed a cross-complaint in which there were four causes of action separately stated.

The cause was tried before the court and a jury, and resulted in a verdict in favor of the subcontractor and against the plaintiff in the sum of $8,104.10. The plaintiff moved for judgment notwithstanding the verdict, and, in the alternative, for a new trial, both of which motions were overruled, and judgment was entered upon the verdict, from which the plaintiff appeals.

The facts necessary to present the questions here to be determined may be summarized as follows: In the month of June, 1929, the appellant contracted with the United States of America to furnish all the labor and material and to complete certain additions, alterations and revisions to the American Lake Hospital, located in Pierce county, this state, according to the plans and specifications therefor prepared by the United States Veterans Bureau. August 31, 1929, the appellant contracted with the respondent Robert Haddow, Jr., for the plumbing and heating work required under the government plans and specifications. This subcontract, among other things, provided that Haddow was to do the work

" . . . in accordance with the plans and specifications prepared therefor by the United States Veterans

Bureau provided for in that certain contract between the contractor and the United States Government.''

The engineer for the United States Veterans Bureau had prepared a large number of copies of the blue prints and specifications, the latter being upon mimeograph paper. Before Haddow bid upon the work which he was to do under his subcontract, the appellant caused a copy of the plans and specifications to be delivered to him, twelve or more copies having previously been delivered to the appellant.

Item H-770, in the specifications, covered the item of radiator recesses. In the copy of the specifications delivered to Haddow, he and his witnesses testified that, at the time it was delivered, the word "out," in red pencil lettering, was written across this item; and that, before the contract was signed, he discussed this matter with the appellant, and it was understood that Haddow was not to include this item in his bid. The appellant and his witnesses testified that the copy of the specifications delivered to Haddow did not have the word "out" written across the item mentioned.

After Haddow had entered upon the performance of the contract, the question as to the recesses, which were provided for in the item mentioned, arose between the parties, and, as he testifies, he contracted with the appellant to do that work as an extra.

At the time this action was instituted, there was a balance due Haddow upon his subcontract in the sum of $4,288.10. For the radiator recesses done under an oral contract subsequent to the time the subcontract was entered into and while the work was being performed, he sought recovery for the sum of $3,405.

Prior to the institution of this action, an action had been instituted in the Federal court against the appel-

lant in this action, the surety upon his bond, and Haddow to recover for material which had been furnished the latter. The amount of these claims was $8,153.34.

As above stated, the jury returned a verdict in favor of Haddow and against the plaintiff in the sum of $8,104.10. The other items for which recovery was sought in the cross-complaint are small, and no further mention will be made of them.

The first sentence in the appellant's opening brief is: "This appeal principally raises a question of the application of the parol evidence rule to a construction contract." Whether the word "out" was written across item H-770 in the copy of the specifications upon which Haddow bid, presented a question of fact which was unequivocally submitted to the jury in an instruction, and the jury found in favor of Haddow. Under this finding, it must be accepted as a fact that the word "out" had been written across that copy of the specifications at the time of Haddow's bid.

If this does not show a clear intent that he was not to bid upon the radiator recesses covered by item H-770, then the contract between the parties at least became ambiguous, and parol evidence was admissible. *Carstens v. Earles,* 26 Wash. 676, 67 Pac. 404; *Durand v. Heney,* 33 Wash. 38, 73 Pac. 775. Many other cases might be cited, but the rule is so well settled as to have become elementary.

The appellant invokes the rule that a written contract cannot be contradicted, explained or enlarged, varied or controlled by extrinsic evidence of a prior or contemporaneous, different parol agreement. But that rule and the authorities supporting it have no application to the present situation. The trial court did not err in admitting the parol evidence complained of.

■ The next question is whether Haddow can recover for the radiator recesses as an extra, since that contract rested in parol. The contract signed by the appellant and Haddow contained this provision:

"Allowances for extra work and deductions for omissions shall be by mutual agreement between the contractor and the subcontractor, and shall be fixed in writing in advance on demand of either party."

Haddow testified:

"Q. Now, at that time did Mr. Dioguardi say anything with reference to putting it in writing? . . . A. No, sir."

If this testimony was denied, our attention has not been called to it, and we have been unable to find any such denial in the record. The contract provided that allowances for extras should be fixed in writing upon the demand of either party, but, neither party having demanded a writing, the oral contract therefore became effective.

■ The next question is whether the trial court entered the proper judgment, which was a money judgment against the appellant in the sum above mentioned. Concurrently with the signing and entering of the judgment, the trial court signed and entered an order which contained this provision:

"Ordered and adjudged that the sums, if any, paid into the registry of the court under judgment entered in this cause June 27, 1931, shall be held by the clerk of court in the registry of the court subject to the orders of this court, and shall not be disbursed to any parties to this cause until ordered by the court before whom this cause was tried."

The purpose of this order apparently was to make the money paid into the court upon this judgment, if any, available to satisfy the claims of the materialmen

if they should get judgment in the Federal court. When the judgment is read in connection with the order, we do not see how the appellant can be prejudiced.

The judgment will be affirmed.

TOLMAN, C. J., BEALS, HOLCOMB, and MILLARD, JJ., concur.